# United States Court of Appeals
## For the First Circuit

No. 02-1357

ARTHUR SHEEHAN,

Plaintiff, Appellant,

v.

THE CITY OF GLOUCESTER,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Nancy S. Tierney, for appellant.
Bradford N. Louison, with whom Merrick, Louison & Costello,
was on brief, for appellee.

February 25, 2003

**TORRUELLA**, **Circuit Judge**.  This appeal asks us to revisit a dispute between the City of Gloucester and Arthur Sheehan, a former member of the Gloucester Police Department.  Previously, after reviewing the district court's entry of summary judgment for the defendant, we remanded the case for further consideration of Sheehan's Americans with Disabilities Act ("ADA") claim in light of an intervening decision by the Supreme Court in Murphy v. United Parcel Services., Inc., 527 U.S. 516 (1999).  Sheehan v. City of Gloucester, 207 F.3d 35 (1st Cir. 2000).  After further proceedings, the district court again entered summary judgment for the defendant.  While the case was before the district court on remand, a Supreme Court decision once again transformed the terrain of disability law, this time with unfortunate consequences for Sheehan.  See Toyota Motor Mfg. v. Williams, 534 U.S. 184 (2002).  The district court granted summary judgment for the defendants and found, using Toyota for guidance, that Sheehan was not disabled under the ADA.  Sheehan now appeals the district court's application of Toyota, claiming, inter alia, that delay by the district court caused him to lose under Toyota rather than prevail under Murphy.  This time around, we affirm.

## Factual Background

The factual background of Sheehan's case is set forth in the district court's opinion, Sheehan v. Marr, 2002 WL 389297 (D. Mass. March 27, 2000), and our opinion, Sheehan v. City of

Gloucester, 207 F.3d 35 (1st Cir. 2000) ("Sheehan I"). We will again briefly summarize the relevant facts and update them to reflect events since our last opinion.

Sheehan was a member of the Gloucester Police Department from 1965 to 1994. In 1984, Sheehan began receiving treatment for hypertension. In August and October of 1992, and August of 1993, he was hospitalized due to incidents of chest pain, some of which occurred while he was on duty. Then fifty-two years old, Sheehan did not return to duty after the 1993 hospitalization.

Several physicians concluded that Sheehan's hypertension and chest pain were the result of job-related stress. In October of 1993, Dr. Madhu Thakur examined Sheehan at the defendant's request. Based upon his review of the job description for a Gloucester police officer, Dr. Thakur concluded that Sheehan "should retire from the police force in Gloucester and his retirement should be permanent."

On November 4, 1993, Gloucester Police Chief James Marr submitted an application for involuntary disability retirement on Sheehan's behalf with the Division of Public Employee Retirement Administration ("PERA"). A panel of three physicians found that Sheehan was physically incapacitated and substantially incapable of performing his particular job and that his incapacity was likely to be permanent. Based upon the medical panel's determination, PERA concluded that Sheehan qualified for accidental disability and

-3-

recommended that he be retired from the Gloucester police force. Sheehan was retired on August 17, 1994.

## Procedural Background

In May 1996, Sheehan brought an action for age and disability discrimination in the United States District Court for the District of Massachusetts, contending that the denial of his request for a reasonable accommodation violated his rights under the ADA. The City of Gloucester filed a motion for summary judgment, asserting, inter alia, that Sheehan was not "disabled" under the ADA, and alternatively, that they had offered Sheehan reasonable accommodation (by offering him a quieter night shift, which he declined).

The district court granted summary judgment for the defendants on May 20, 1998. On March 27, 2000, we remanded the case for further consideration of Sheehan's ADA claim in light of the Supreme Court's intervening decision in Murphy, 527 U.S. 516 (1999).[1]

---

[1] The sole issue on remand was the effect of the Murphy decision on Sheehan's ADA claim against the City of Gloucester. We did note, however, that the district court had a wide degree of latitude in considering that claim. We stated that:

> The district court, after consideration of the ADA claim, may, if it is so persuaded, award defendants summary judgment once again, or, of course, make any other determination of the matter it deems proper, including assigning the case for trial.

Sheehan I, 207 F.3d at 41-42.

-4-

While the case was pending before the district court, the Supreme Court decided <u>Toyota Motor Manufacturing</u> v. <u>Williams</u>, 534 U.S. 184 (2002), which addressed the question of what an ADA plaintiff must demonstrate to establish a substantial limitation in the specific major life activity of performing manual tasks. <u>Id</u>. at 691. Applying <u>Toyota</u> to Sheehan's ADA claim, the court found that Sheehan was not disabled as defined by the ADA because there was no evidence that Sheehan's hypertension rendered him unable to perform a sufficiently broad range of jobs.[2] <u>Sheehan</u>, 2002 WL 389297, at *5. Noting that after his retirement from the Gloucester police force Sheehan continued to work as a security guard for 24-32 hours per week, the court held that his ability to work had not been substantially limited by hypertension. <u>Id</u>. The court concluded, "[a]ccordingly, I find that he fails -- even under the most generous reading of recent Supreme Court caselaw -- to satisfy the first prong of the ADA's definition of disability: he does not manifest a physical or mental impairment that substantially limits one or more of his major life activities." <u>Id</u>.

_____

[2] The ADA defines the term "disability" as:

    (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
    (B) a record of such an impairment; or
    (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

-5-

The district court also rejected Sheehan's claim that he satisfied the ADA's definition of disabled because he had a "record" of a physical or mental impairment that substantially limits one or more major life activities. See 42 U.S.C. § 12102(2)(B).

Finally, the district court considered and rejected Sheehan's claim that he qualified as disabled under the ADA because the defendant regarded Sheehan as having a disability, as contemplated by 42 U.S.C. § 12102(2)(C). The court held that although the City of Gloucester considered Sheehan to be unable to perform the job of a Gloucester police officer, that was not the same as showing that the defendants regarded him as disabled for purposes of the ADA. According to the court, the ADA's statutory classification, as construed by the Supreme Court "requires that the defendant [has] regarded Sheehan's hypertension as rendering him unable to perform a broad range of jobs." Id. (citing Murphy, 527 U.S. at 521-23). The court concluded that Sheehan had not produced any evidence in support of his argument that the City of Gloucester regarded him as unable to perform a broad range of jobs.

Sheehan appealed the district court's entry of summary judgment. His primary argument on appeal is that the district court erroneously and unfairly applied the Supreme Court's recent Toyota decision to his case. As peculiar as this claim is, Sheehan's appeal is remarkable more for the issues it fails to

raise, rather than for the issues actually raised: he does not dispute that under Toyota, his hypertension does not constitute a "disability" as that term is defined by the ADA. Instead, Sheehan's argument is that the district court took an unreasonable length of time to decide the defendant's motion for summary judgment, and, because of the court's delay, his case was decided under the guidelines provided in Toyota -- which was decided in 2002 -- rather than under Murphy -- which was decided in 1999. According to Sheehan, if his case had been decided in a timely manner, he would have prevailed under Murphy. By subjecting him to the Court's decision in Toyota, Sheehan claims the delay resulted in an ex post facto application of law and denied him his due process rights.

## Discussion

We review the district court's grant of summary judgment for the City of Gloucester de novo. We affirm the district court's judgment only if there is no genuine issue of material fact and if the City of Gloucester is entitled to judgment as a matter of law. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).

Sheehan's contention is essentially that the district court's delay exposed him to unfavorable Supreme Court precedent which in turn compelled the district court to grant a motion of summary judgment against him. Although we understand Sheehan's

-7-

frustration with the delay below, there is no merit to his claim that the timing of the district court's decision and its application of Toyota violated his constitutional rights. A party simply does not suffer any legally cognizable injury when a court applies the intervening precedent of a higher court which decides an issue against that party. After all, it is axiomatic that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Richmond Sch. Bd., 416 U.S. 696, 711-12 (1974).

It is immaterial that the "law in effect" at the time the court renders its decision is an intervening change in the law, or that the law took effect after some delay in the district court. As Chief Justice Marshall articulated in 1801:

> It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional . . . I know of no court which can contest its obligation.

United States v. Schooner Peggy, 1 Cranch 103, 5 U.S. 103, 110 (1801).

While Sheehan would have us turn back the clock and apply the law as it existed prior to Toyota, he does not offer any

legitimate argument why Toyota should not be applied to his case. Sheehan does not dispute that Toyota was the "law in effect" at the time his case was decided. He does not distinguish Toyota in any substantive manner. And further, he does not allege that the district court's finding under Toyota, that his hypertension did not constitute a "disability" as that term is defined by the ADA, is erroneous.

Instead Sheehan claims that the court's application of Toyota violated his rights under the ex post facto provisions of the United States Constitution and the Massachusetts General Laws. Sheehan maintains that by applying the modifications and changes to the ADA, propounded by cases such as Toyota, the district court has ex post facto changed the definition and rights provided under the ADA.

It is well settled that the prohibitions against ex post facto laws apply only when the statute is criminal or is punitive in nature. Johannessen v. United States, 225 U.S. 227, 242 (1912); Taylor v. Rhode Island, 101 F.3d 780, 782-83 (1st Cir. 1996); In re Dutil, 768 N.E.2d 1055, 1065 (Mass. 2002). As there is no plausible argument that the application of Toyota constituted a retroactive "punishment," Sheehan's ex post facto arguments are without merit. The district court correctly applied Toyota to Sheehan's pending claim.

In his brief before the Court, Sheehan argued alternatively that even if the district court correctly applied Toyota to his case, he in any event qualifies as disabled because (1) his hypertension substantially interfered with his ability to work; and (2) the City demonstrated that it regarded Sheehan as being disabled when it had him involuntarily retired from the police force. Although we believe that these arguments simply constitute further attempts to circumvent Toyota, we nevertheless briefly dispatch these claims.

First, the district court correctly found that Sheehan failed to demonstrate that his physical impairment rendered him incapable of performing a broad class of jobs. The Supreme Court has repeatedly noted that even assuming that working is a major life activity, a claimant must show an inability to work in a "broad range of jobs," rather than one specific job. Sutton v. United Air Lines, 527 U.S. 471, 492 (1999). Thus, for Sheehan to prevail on his claim that he is substantially limited in the major life activity of working, he "must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." Id. Applying Sutton to Sheehan's claim, it is enough to note that Sheehan continued to work for 24-32 hours per week as a security guard for us to determine that

Sheehan's physical impairment simply did not preclude him from a substantial class of jobs.

Second, although the record clearly sets forth the City's belief that Sheehan was incapable of working as a Gloucester police officer due to his hypertension and risk of heart attack, this evidence is not sufficient for Sheehan to be considered disabled for purposes of the ADA. In order for us to find Sheehan disabled under the "regarded as" prong of the ADA, Sheehan would have to show that the City regarded his hypertension as rendering him unable to perform a broad range of jobs. See Murphy 527 U.S. at 522-23. Sheehan has not presented any evidence supporting this larger conclusion.

Finally, Sheehan argues that the district court erred when it issued its opinion without providing the parties an opportunity to amend or supplement the pleadings to make their case under Toyota. For our purposes, it makes no difference whether or not Sheehan actually moved for leave to amend, as his argument will fail in any event. The decision whether to allow motion for leave falls within the district court's discretion. Manzoli v. Commissioner, 904 F.2d 101, 103 (1st Cir. 1990), and there was no abuse of discretion here.

Judgment **affirmed**. No costs are imposed.