# United States Court of Appeals
## For the First Circuit

No. 15-1052

TOWN OF PORTSMOUTH, RHODE ISLAND,

Plaintiff, Appellant,

v.

MICHAEL P. LEWIS in his official capacity as Director of the
Rhode Island Department of Transportation,
RHODE ISLAND DEPARTMENT OF TRANSPORTATION,
DANIEL J. BERMAN in his official capacity as Division
Administrator of the Federal Highway Administration,
VICTOR MENDEZ in his official capacity as Administrator
of the Federal Highway Administration,
FEDERAL HIGHWAY ADMINISTRATION,
BUDDY CROFT in his official capacity as Executive Director of
the Rhode Island Turnpike and Bridge Authority, and
RHODE ISLAND TURNPIKE AND BRIDGE AUTHORITY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Kevin P. Gavin, with whom Law Office of Kevin P. Gavin,
Terence J. Tierney, and Law Office of Terence J. Tierney were on
brief, for appellant.
Jeffrey H. Gladstone, with whom Robert K. Taylor and Partridge
Snow & Hahn LLP were on brief, for appellees Michael P. Lewis and

Rhode Island Department of Transportation.

Richard B. Myrus, Assistant U.S. Attorney, and Peter F. Neronha, United States Attorney, on brief for appellees Daniel J. Berman, Victor Menendez, and Federal Highway Administration.

William E. O'Gara, Brian J. Lamoreux, Rebecca M. Murphy, and Pannone Lopes Devereaux & West LLC on brief for appellees Rhode Island Turnpike and Bridge Authority and Buddy Croft.

February 10, 2016

**HOWARD**, **Chief Judge**. The Town of Portsmouth, Rhode Island challenges a district court order dismissing its claims against federal and state transportation agencies and officers for collecting tolls on the Sakonnet River Bridge in violation of the anti-tolling provision of the Federal-Aid Highway Act (FAHA), 23 U.S.C. § 301, and the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4347. After the Town filed this suit in federal court, the Rhode Island legislature repealed the tolls. Consequently, the district court denied on mootness grounds the Town's requests for injunction, declaratory judgment, and monetary relief, and dismissed the Town's complaint. We agree with the district court that this legislative repeal rendered moot the Town's claims for injunctive and declaratory relief. We also conclude that the Town did not sufficiently allege or preserve a restitution claim. Even were we to excuse this insufficiency, however, the restitution claim would still fail because the Town lacks a right of action. Accordingly, we affirm the district court's dismissal of the complaint.

## I. Background

Since 1956, the Sakonnet River Bridge has spanned the Sakonnet River, connecting the communities of Portsmouth and Tiverton, Rhode Island. In 1999, the Rhode Island Department of Transportation (the state DOT) and the Federal Highway Administration (the FHWA) considered options for restoring or

replacing the aging bridge. In light of opposition to bridge tolls by the public and Rhode Island's governor, the state DOT did not include tolls as a means of financing the bridge in its Final Environmental Impact Statement, and the FHWA affirmatively stated in its Record of Decision that tolls were not being considered.

Eventually, federal funds were approved, and a new toll-free bridge opened in September 2012. Later that year, however, the Rhode Island General Assembly enacted legislation allowing the Rhode Island Turnpike and Bridge Authority (the Authority) to impose tolls on the bridge. The following year, the state DOT issued a reevaluation of its earlier Environmental Impact Statement to account for the new tolls. The FHWA also issued a Revised Record of Decision approving the tolls.

In April 2013, the Town filed a two-count complaint against the state and federal agencies (the state DOT, the Authority, and the FHWA) in federal district court, seeking injunctive and declaratory relief, attorney fees, and unspecified general relief. One count alleged that the tolls violated the anti-tolling provision of the Federal-Aid Highway Act, 23 U.S.C. § 301, which generally prohibits tolls on federally funded bridges. The other count claimed that the defendants had failed to comply with NEPA's procedures in evaluating the impact of the tolls.

In June 2013, the district court heard and denied the Town's motion for a preliminary injunction. In August, the

Authority began to collect tolls on the bridge. In November, the Town filed a motion for summary judgment on its anti-tolling claim. Before the court decided the motion, however, the Rhode Island General Assembly enacted a prohibition on toll collection after June 2014. In July 2014, the Town filed a motion seeking restitution of previously collected tolls. In its motion, the Town stated that its restitution claim was contingent upon the district court granting its earlier summary judgment motion. The defendants successfully moved to dismiss all claims as having been rendered moot by the new statute. See Town of Portsmouth v. Lewis, 62 F. Supp. 3d 233 (D.R.I. 2014). This timely appeal followed.

## II. Mootness

Because resolution of the mootness issue may affect our jurisdiction, we decide it before reaching the merits. Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops (ACLUM), 705 F.3d 44, 52 (1st Cir. 2013). "[A]n actual controversy must exist at all stages of the review, not merely at the time the complaint is filed." Id. "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Another way of putting this is that a case is moot when the court cannot give any effectual relief to the potentially prevailing party." Id. (internal quotation marks and citations omitted). Absent factual findings

- 5 -

that bear on the issue, we review the district court's dismissal for mootness de novo. See id.

## A. Declaratory and Injunctive Relief

Inescapably, the Town's claim for injunctive relief is moot because the state has repealed the tolls, so there is no ongoing conduct to enjoin. The Town tries to avoid this conclusion by arguing that what it seeks to enjoin is possible future tolling pursuant to the FHWA's approval of tolling in its 2013 Revised Record of Decision. But we generally consider the law as it exists at the time of our review, see Sheehan v. City of Gloucester, 321 F.3d 21, 24 (1st Cir. 2003) (quoting Bradley v. Richmond Sch. Bd., 416 U.S. 696, 711-12 (1974)), not as it might speculatively exist in the future. Thus, even if we were permitted to issue an advisory opinion on hypothetical conduct, which we are not, we would decline to do so. Nothing prevents the Town from seeking an injunction if and when the state should begin to collect tolls anew.

The Town's claim for declaratory relief fails for similar reasons. In order for a claim for declaratory relief to survive a mootness challenge, the Town must "show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ACLUM, 705 F.3d at 54 (internal formatting omitted). Because the state legislature has prohibited toll collection, "[t]he controversy here is at this point neither immediate nor real." Id. As with the claim for

injunctive relief, we decline to issue a declaration about the legality of hypothetical tolls.

In an attempt to revive these moot claims, the Town relies on the "voluntary cessation" exception.  This exception can apply when a "defendant voluntar[ily] ceases the challenged practice" in order to moot the plaintiff's case, id., and there exists "a reasonable expectation that the challenged conduct will be repeated following dismissal of the case," id. at 56.  The exception's purpose is to deter a "manipulative litigant [from] immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after."  Id. at 54-55.  In light of this purpose, the exception ordinarily does not apply where the voluntary cessation occurred for reasons unrelated to the litigation.  See id. at 55.

Here, there is no basis upon which to conclude that the state legislature repealed the tolls in order to make the present litigation moot, so the exception does not apply.[1]  Generally, we presume that a state legislature enacts laws in good faith, see,

---

[1]  Moreover, it is not obvious to us that the legislative repeal can be attributed to the defendants' voluntary actions at all.  As we have stated in an analogous context, "new legislation is generally considered an intervening, independent event and not voluntary action, particularly when the governmental entity taking the appeal, as here, is not part of the legislative branch." Diffenderfer v. Gomez-Colon, 587 F.3d 445, 452 (1st Cir. 2009) (holding that vacatur of district court decision was not proper where case was mooted by intervening legislative act).

e.g., Miller v. Johnson, 515 U.S. 900, 916 (1995), not with the improper motive of mooting pending litigation. See Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y., 356 F.3d 365, 376 (2d Cir. 2004); 13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.6 n.41 (3d ed. 2008 & Supp. 2015) (collecting cases). Indeed, we note that although the Supreme Court has not hesitated to invoke the voluntary cessation exception when considering the conduct of private, municipal, and administrative defendants, it has not applied the exception to state legislatures. Rather, it has consistently and summarily held that a new state statute moots a case, without engaging in further inquiry. See, e.g., Massachusetts v. Oakes, 491 U.S. 576, 582-84 (1989); Kremens v. Bartley, 431 U.S. 119, 129 (1977); Hall v. Beals, 396 U.S. 45, 48 (1969); Berry v. Davis, 242 U.S. 468, 470 (1917).

Undaunted, the Town argues that the exception applies here because the state's governor has proposed new tolls and the state senate passed a bill reauthorizing tolls, S. 997 Substitute A, 2015 Reg. Sess. (R.I. 2015).[2] This argument also fails, however,

---

[2] We note, moreover, that this proposed legislation does not specifically grant authority to collect tolls on the Sakonnet River Bridge. Rather, it reflects an initiative by the governor to secure generalized authority for the imposition of truck tolls on various highways within the state (none of which are specified in the legislation). In all events, the bill failed to secure passage in the House, and the legislative session expired.

because even were it theoretically possible to overcome the presumption that the legislature acted in good faith, a proposition that we doubt, the factual record is insufficient to that task. In the first place, the fact that the senate and governor have already acted in favor of new tolls -- prior to the resolution of this appeal -- suggests that their actions are motivated by something other than this litigation. Moreover, the capital infrastructure for collecting the tolls has been dismantled, hardly the behavior of a defendant that intended to return to its old ways upon dismissal of a case. In short, we have little cause to believe that the legislature repealed the tolls in order to immunize its actions from judicial review, and the voluntary cessation exception does not apply to save the mooted claims.

## B. Restitution

Strictly speaking, the Town's restitution claim may not be moot, unlike its claims for injunctive or declaratory relief. It is settled law that a claim for monetary relief, including restitution, may survive events that moot injunctive or declaratory relief. See N.L.R.B. v. Me. Caterers, Inc., 732 F.2d 689, 691 (1st Cir. 1984) (holding that claim for cost reimbursement and making employees whole is not moot, despite the defendant having ceased the challenged practice); see also Demelo v. U.S. Bank Nat'l Ass'n, 727 F.3d 117, 124-25 (1st Cir. 2013) (claim for money damages survives despite mootness of other relief). Here,

notwithstanding the statute repealing toll collection, the Town seemingly retains a cognizable interest in a refund of the tolls that it alleges were illegally collected. The district court has the power to order a refund, and the restitution claim would therefore appear to remain viable for purposes of Article III jurisdiction.[3]

The defendants suggest that the restitution claim is nevertheless moot because, to the extent that the claim was adequately alleged, the Town explicitly acknowledged in the district court that restitution was dependent on the viability of the injunctive and declaratory claims. As we have stated, however, for jurisdictional purposes, the Town would seem to have a sufficiently continuing interest in the restitution of the illegally collected tolls. A defect in pleading does not necessarily affect our power to hear the case. Federal courts have jurisdiction so long as a party is arguably entitled to relief, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998), and a party's error in requesting that relief does not affect a court's jurisdiction, Avco Corp. v. Aero Lodge No. 735,

---

[3] The parties dispute whether the court can order the Authority to refund all of the tolls that it collected, or only those that it collected from the Town itself. We do not reach this issue, because the Town has sufficiently shown that it has paid for at least one toll, and that payment, however small, is sufficient to avoid mootness. See Chafin v. Chafin, 133 S. Ct. 1017, 1023 (2013).

Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 561

(1968).  More generally, a slim chance of success on the merits

does not deprive a court of its jurisdiction unless the party's

claim is "wholly insubstantial and frivolous."  Shapiro v. McManus,

136 S. Ct. 450, 455 (2015).  And a federal court possessing

jurisdiction has a "virtually unflagging obligation" to exercise

it to reach the merits.  Mata v. Lynch, 135 S. Ct. 2150, 2156

(2015).

## III. Merits

While an adequately pled claim for restitution would not

be moot, here the restitution claim nevertheless fails because the

Town did not sufficiently allege the claim in the district court.

And, even were the Town to have done so, the claim would fail

because the Town lacks a right of action.[4]

## A. Sufficiency of the Town's Allegations

The defendants argue that the restitution claim is

barred either because the Town failed to specifically seek

restitution in its complaint, or because the Town conditioned its

motion for restitution on the moot claims for injunctive and

declarative relief.  Regardless of the merit of the defendants'

first argument, we agree with their second.

---

[4] The Town's request for attorney fees is dependent on its
other claims, so it fails as well.

A plaintiff's failure to seek a remedy in its complaint does not necessarily forgo that remedy. Under Federal Rule of Civil Procedure 54(c), every non-default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Pursuant to this Rule, a district court may grant relief not sought in the complaint. See, e.g., House of Flavors, Inc. v. TFG Mich., L.P., 643 F.3d 35, 39 (1st Cir. 2011). Likewise, a district court need not dismiss a cause of action upon which relief is plausible, even if that relief was not sought in the complaint. See Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 65-66 (1978); Bontkowski v. Smith, 305 F.3d 757, 762 (7th Cir. 2002) (Posner, J.); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 n.7 (3d ed. 2004 & Supp. 2015).

That does not of course mean that there are no limits to the liberality of Rule 54(c). There are. For example, a district court need not consider remedies based on a cause of action not pled in the complaint. See Governor Wentworth Reg'l Sch. Dist. v. Hendrickson, 201 F. App'x 7, 9 (1st Cir. 2006) (per curiam). A court may also find that a party's failure to request relief so prejudiced the other party that granting relief would be unjust. See United States v. Marin, 651 F.2d 24, 31 (1st Cir. 1981). And we need not consider a remedy first raised on appeal. See Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 480 (1st Cir. 1997).

Here, Rule 54(c) could apply. Although the Town did not specifically seek the remedy of restitution in its complaint, there is no evidence that this prejudiced the defendants. In addition, the Town made a general prayer for relief and moved for restitution in the district court based on the causes of action in its complaint.

That being said, the Town nevertheless has foregone any entitlement to restitution because it conditioned the restitution claim on the now moot claims for injunctive and declaratory relief. Even in its principal brief on appeal, the Town suggests that the restitution claim stands or falls with the injunctive and declaratory claims. See Town's Br. at 23. As we have explained, however, the district court correctly ruled that it no longer had jurisdiction over those claims.

The Town reverses course in its reply brief, arguing for the first time that its belated request for restitution breathes life into its otherwise moribund declaratory claim. The Town asserts that a declaration (that the tolls were illegally collected) acts as a "predicate" to restitution and that therefore both claims remain alive. Whatever merit this argument may have in the abstract, see Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011); Nelson v. Miller, 570 F.3d 868, 883 (7th Cir. 2009), we do not ordinarily consider arguments raised for the first time in an appellant's reply brief, Rivera-Muriente v. Agosto-Alicea, 959

- 13 -

F.2d 349, 354 (1st Cir. 1992). The Town has thus waived this argument, and its restitution claim is accordingly foreclosed.

## B. Private Right of Action

In any event, even were we to excuse the Town's waiver, we would deny relief for lack of a private right of action. The Town argues that it may proceed under either NEPA or the anti-tolling provision, 23 U.S.C. § 301, but neither of these statutes provide it with a right of action.

We need not linger over the argument based on NEPA. We have expressly held that NEPA provides no private right of action at all. Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv., 674 F.3d 97, 102 (1st Cir. 2012). A majority of the other circuits that have decided this issue agree. See, e.g., Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 72 (D.C. Cir. 2011); Sw. Williamson Cty. Cmty. Ass'n, Inc. v. Slater, 173 F.3d 1033, 1035 (6th Cir. 1999). But see S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 331 (4th Cir. 2008).

Turning to the anti-tolling provision, that statute does not explicitly provide for a private right of action. We think that it does not imply a right of action either.[5] Whether a statute

_____

[5] The Town also suggests that a right of action lies under 42 U.S.C. § 1983, Ex parte Young, 209 U.S. 123 (1908), or nonstatutory review, see R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 41-42 (1st Cir. 2002). But these avenues involve remedies, not rights, and they depend upon the existence of an enforceable federal right in the first instance, which does not exist here.

implies a right of action is a question of statutory interpretation, and our review is de novo. Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 83 (1st Cir. 2004). In determining whether a federal funding statute creates a right of action, the key inquiry is whether the statute is "phrased in terms of the persons benefited" "with an unmistakable focus on the benefited class." Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002). In other words, "for a statute to create private rights of action, 'its text must be phrased' in terms of the class protected." Bonano, 365 F.3d at 85 (quoting Gonzaga, 536 U.S. at 284). We also consider whether the statute is worded in terms of government policy and practice or individual entitlements, and whether Congress provided alternate mechanisms for enforcing the statute. See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 73 (1st Cir. 2005) (citing Gonzaga, 536 U.S. at 287-90). All of these factors weigh against finding an implied right of action here.

> The anti-tolling provision provides that
>
> > [e]xcept as provided in section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from tolls of all kinds.

23 U.S.C. § 301. Beginning with the first factor, the statute is phrased in terms of government activities, not protections accorded to a benefited class. That is, it does not say (for example) that "no tolls shall be collected from any motorist who

- 15 -

uses highways constructed under the provisions of this title," but rather requires the government to ensure that the highways that it constructs are toll-free. See, e.g., Gonzaga, 536 U.S. at 287 (comparing "individually focused terminology of Titles VI and IX ('No person . . . shall . . . be subjected to discrimination')" with the lack of rights-creating language in the statute at bar, which directed that "'[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice'").

Similarly, the statute is worded in the language of government highway policy and practice, not the entitlements of motorists who use toll bridges. It sets forth a policy that federally funded highways must, with some exceptions, be toll-free highways. That policy has an "aggregate focus" that benefits the highway-using public at large. Id. at 288 (internal quotation marks omitted). It does not express "concern[] with whether the needs of any particular person have been satisfied." Id. (internal quotation marks omitted).

Finally, the Act grants the FHWA enforcement authority through its discretion to approve federal funds. See, e.g., 23 U.S.C. §§ 105(a), 106(a), 109, 116(d); see also, e.g., City of Cleveland v. Ohio, 508 F.3d 827, 842 (6th Cir. 2007) (FHWA has discretion to withhold federal funds where construction contract does not comply with its standards). FHWA's ample authority to

enforce the Act "plainly exhibits Congress's preference for <u>public</u> enforcement." <u>Bonano</u>, 365 F.3d at 85.

Thus the anti-tolling provision does not provide the Town with a private right of action. In so concluding, we join other circuits that have construed various provisions of the Federal-Aid Highway Act not to imply a private right of action. See <u>Endsley</u> v. <u>City of Chi.</u>, 230 F.3d 276, 279 (7th Cir. 2000) (23 U.S.C. § 129(a)(3)); <u>Jersey Heights Neighborhood Ass'n</u> v. <u>Glendening</u>, 174 F.3d 180, 186 (4th Cir. 1999) (23 U.S.C. § 128); <u>Allandale Neighborhood Ass'n</u> v. <u>Austin Transp. Study Policy Advisory Comm.</u>, 840 F.2d 258, 267 (5th Cir. 1988) (23 U.S.C. § 134). In fact, we are not aware of any court that has found an implied right of action in the Act. See <u>KM Enters., Inc.</u> v. <u>McDonald</u>, No. 11-CV-5098, 2012 WL 4472010, at *17 (E.D.N.Y. Sept. 25, 2012), <u>aff'd</u>, 518 F. App'x 12 (2d Cir. 2013) (collecting cases).[6]

We address one additional loose end. To the extent that the Town seeks review in this litigation of its NEPA and anti-

---

[6] The Ninth Circuit held that § 301 is enforceable through 42 U.S.C. § 1983, although it did not reach the question of whether § 301 implies a right of action. <u>Clallam Cty.</u> v. <u>Dep't of Transp.</u>, 849 F.2d 424, 427-29 (9th Cir. 1988). In any event, this holding appears to have been abrogated by the Supreme Court's decision in <u>Gonzaga</u>. <u>Clallam</u> had held that § 1983 created an express right of action to enforce § 301, <u>see</u> 849 F.2d at 427-29, but <u>Gonzaga</u> held that § 1983 can only provide a remedy, not a right, <u>see</u> 536 U.S. at 283.

tolling claims through the federal Administrative Procedure Act (APA), 5 U.S.C. § 702, this course is unavailable for two reasons. First, the Town's complaint did not plead an APA claim in a separate count or as a cause of action, but only asserted jurisdiction under the APA. Even where the APA applies, however, it does not confer jurisdiction. See Califano v. Sanders, 430 U.S. 99, 107 (1977).

Second, even assuming that the Town properly pled an APA action, the APA only provides for review of federal agency action (and then only under some circumstances). See 5 U.S.C. § 701. It does not provide a right of action against a state agency. See Johnson v. Rodriguez, 943 F.2d 104, 109 n.5 (1st Cir. 1991). But the Town's claim for restitution lies solely against the defendant that collected the tolls: the Authority. The Authority is a state agency, so the APA does not provide a right of action against it.

**IV. Conclusion**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

- 18 -